UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**FRANKFORT**

| | | |
|---|---|---|
| FARMERS DEPOSIT BANK | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action No. 3:04-43-JMH |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| BANK ONE, NATIONAL | ) | |
| ASSOCIATION, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |
| | ) | |

** ** ** ** **

This matter is before the Court on Plaintiff's motion for partial summary judgment [Record No. 29] and Defendant's motion for partial summary judgment [Record No. 27]. Plaintiff and Defendant have filed their respective responses and replies to these motions, and thus, fully briefed, this matter is ripe for review.

## I. FACTUAL BACKGROUND

Plaintiff Farmers Deposit Bank ("Farmers") brought suit against Defendant Bank One for failure to abide by state and federal laws regarding sixteen checks it presented to Bank One in June of 2003. Browning Pontiac maintained accounts with both Plaintiff and Defendant. Fifteen of the checks at issue in this case were drawn on Browning Pontiac's account at Bank One and one check was drawn on Browning Pontiac's account at Central Bank and presented by Farmers to Bank One for collection. On June 10, 2003,

1

Browning used three checks drawn on its Bank One account to obtain a cashier's check from Farmers.  Bank One and Farmers agree that these checks — 8573, 8574, and 8577 — were first presented to Bank One on June 10, 2003.

On June 12, 2003, Browning deposited check number 4525 drawn on its account at Central Bank into its account at Farmers.  Bank One argues that it received the check from Farmers on June 12, 2003 and sent it to the Federal Reserve Bank for collection on Friday, June 13, 2003.  On the next business day, Monday, June 16, 2003, Central Bank returned the check for insufficient funds.

On June 13, 2003, Farmers received two more checks drawn on Browning Pontiac's Bank One account in exchange for a cashier's check.  That same day, Farmers presented check numbers 8582 and 8584 to Bank One and presented check number 8577 for a second time.  Bank One deducted the amounts of those checks from Browning Pontiac's account on Friday, June 13, 2003.  Bank One argues that on June 13, 2003, it noticed the large drafts and deposits between Browning Pontiac's Bank One and Farmers accounts and therefore suspected check kiting.  Based on those suspicions of check kiting, Bank One reversed its previous transactions on those three checks, credited Browning Pontiac with the money that it had deducted earlier, and sent check numbers 8577, 8582, and 8584 to the Federal Reserve Bank on Monday, June 16, 2003.  On June 17, 2003, Bank One contends that it sent Electronic Advance Return Notification System

2

notices ("EARNS Notices") to Farmers notifying it of nonpayment and return of those three checks.

Based on its suspicions of check kiting, on June 16, 2003, Bank One placed a hold on Browning Pontiac's account, called Browning Pontiac's owner, Marlyn Browning, and sent him a letter to inform him that the account would be closed on July 1, 2003.  Also on June 16, 2003, Browning Pontiac deposited check numbers 8586, 8587, 8588, 8590, 8591, 8592, 8593, 8594, 8595, and 8596 drawn on its Bank One account into its account at Farmers.  Farmers presented those ten checks to Bank One on June 16, 2003.  In addition to those ten checks, Bank One alleges that Farmers again presented check numbers 8573 and 8574 on June 16, 2003.  On June 17, 2003, Bank One sent check numbers 8573, 8574, 8586, 8588, 8592, 8593, and 8594 to the Federal Reserve Bank.  Bank One contends that it sent EARNS notices for check numbers 8573, 8574, 8586, 8588, 8592, 8593, and 8594 on June 18, 2003.  On June 19, 2003, Bank One sent check numbers 8587, 8590, 8591, 8595, and 8596 to the Federal Reserve Bank.  Bank One concedes that it failed to meet state and federal deadlines by returning these five checks on June 19, 2003.  Finally, Farmers alleges that its employee personally presented check numbers 8577, 8582, and 8584 to Bank One's Shelbyville, Kentucky branch on June 20, 2003.  Citing a hold on the account, Bank One refused to pay the checks.  When Farmers presented the same three checks to Bank One three days later, Bank

3

One contends that it refused to honor the checks and informed Farmers that the Browning Pontiac account would be closed.

Farmers argues that it should be granted summary judgment on the following five checks because Bank One failed to abide by the state and federal return deadlines: 8587, 8590, 8591, 8595, 8596. In its motion, Farmers argues that summary judgment is likewise appropriate as to check numbers 8577, 8582, and 8584 because Bank One refused to honor the checks although sufficient funds were available in Browning's account on June 20, 2003 and because Bank One violated KRS § 355.4-301(1) when it returned the checks after paying the checks on June 13, 2003.

In its motion for partial summary judgment, Bank One argues that summary judgment is appropriate for the eleven checks that it contends were returned in compliance with state and federal law.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact

4

on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Id.* The nonmoving party "cannot rest on its pleadings" alone, but must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997). In considering a motion for summary judgment, the court must construe the facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Bank One is the drawee of fifteen of the checks at issue, and thus, Bank One is the "payor bank." KRS § 355.4-105(3) (West 2005). Bank One is the "collecting bank" with respect to check number 4525 because that check was drawn on Browning Pontiac's account at Central Bank and was presented to Bank One for collection not payment. *Id.* § 355.4-105(5). Under Kentucky law, once a check is presented to and received by a payor bank, that

bank is accountable for the amount of the check if it does not "pay or return the item or send notice of dishonor until after its midnight deadline." KRS § 355.4-302(1)(a) (West 2005). The payor bank's midnight deadline is "midnight on its next banking day following the banking day on which it received the relevant item or notice or from which the time for taking action commences to run, whichever is later." KRS § 355.4-104(j) (West 2005).

In addition to its Kentucky "midnight deadline," a payor bank must also meet federal deadlines under Regulation CC, 12 C.F.R. pt. 229. Under 12 C.F.R. § 229.30, if the payor bank determines not to pay a check, it must return the check "in an expeditious manner." 12 C.F.R. § 229.30(a). A payor bank returns a check in an expeditious manner if it

> sends the returned check in a manner such that the check would normally be received by the depository bank not later than 4:00 p.m. (local time of the depository bank) on the (i) second business day following the banking day on which the check was presented to the paying bank, if the paying bank is located in the same check processing region as the depository bank.

*Id.* § 229.30(a)(1)(i). If a payor bank decides not to pay a check in the amount of $2,500 or more, "it shall provide notice of nonpayment such that the notice is received by the depository bank by 4:00 p.m. (local time) on the second day following the banking day on which the check was presented to the paying bank" *Id.* § 229.33(a). "Notice may be provided by any reasonable means . . . ." *Id.*

6

Farmers contends that Bank One did not comply with these deadlines, and as a result, it is liable for the face amount of the sixteen checks. *See* 12 U.S.C. § 4010(f); 12 C.F.R. § 229.34(d).

### A.  Farmers's Motion for Summary Judgment on Check Numbers 8587, 8590, 8591, 8595, and 8596

Farmers has moved for summary judgment on five checks that Bank One concedes were returned after the expiration of state and federal deadlines.  Admitting that it returned check numbers 8587, 8590, 8591, 8595, and 8596 on June 19, 2003, Bank One argues that summary judgment is not proper because factual issues remain regarding mitigation of damages.  According to Bank One, whether Farmers has mitigated its damages is a material issue of fact that precludes summary judgment on these five checks.  Farmers contends that it has not received any payment from Browning Pontiac on these five disputed checks and that Bank One has not presented any evidence that Farmers has received such payment.

Because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," Bank One's dispute over whether Farmers has received any consideration from Browning Pontiac for these checks will not preclude summary judgment for Farmers. *See Anderson*, 477 U.S. at 248.  Whether Farmers has mitigated its damages is not a dispute that would affect the outcome of this suit, as it is an issue that is irrelevant to Bank One's liability.  Bank One admits that it did not meet the return deadline imposed by

7

KRS § 355.4-302(1), which makes it "accountable for the amount of" those five checks. The evidence presented demonstrates that there are no genuine issues of material fact that preclude summary judgment on check numbers 8587, 8590, 8591, 8595, and 8596.

Farmers's motion for summary judgment on these five checks centers on Bank One's failure to return the checks within the midnight deadline imposed by KRS § 355.4-302(1). The Kentucky Court of Appeals in *Blake v. Woodford Bank & Trust Co.*, 555 S.W.2d 589 (Ky. Ct. App. 1977) explained, "a payor bank is liable for the face amount of the check under UCC § 4-302 when it delays returning a check beyond its midnight deadline." *Id.* at 601. This liability does not rest upon the bank's failure to exercise ordinary care. *Id.* The *Blake* court granted damages "for the face amount of the two checks, less a credit for any amounts which [the payee] may have recovered from [the drawer]." *Id.* at 602.

Although Bank One and Farmers agree that Browning Pontiac has amended its loan agreement with Farmers to include an acknowledgment by Browning Pontiac of its "obligation as drawer of said checks" to repay Farmers $327,010.81, Farmers has maintained that it has not received any payment from Browning Pontiac for these checks. Bank One has not presented any evidence that Farmers has received payment on these checks; therefore, Bank One is liable to Farmers for the face amount of these five checks, $120,503.00.

8

## B.  Farmers's Motion for Summary Judgment on
## Check Numbers 8577, 8582, and 8584

Farmers argues that Bank One violated KRS § 355.4-301 by paying check numbers 8577, 8582, and 8584 on June 13, 2003, later deciding not to honor the checks, and finally returning those checks to the Federal Reserve Bank on June 16, 2003.

If a payor bank, such as Bank One, "settles for a demand item . . . , the payor bank may revoke the settlement and recover the settlement if, before it has made final payment and before its midnight deadline, it: (a) returns the item; or (b) sends written notice of dishonor or nonpayment if the item is unavailable for return."  KRS § 355.4-301(1).  Final payment of an item by a payor bank is addressed at KRS § 355.4-215(1):

> An item is finally paid by a payor bank when the bank has first done any of the following: (a) Paid the item in cash; (b) Settled for the item without having a right to revoke the settlement under statute, clearing-house rule, or agreement; or (c) Made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing-house rule, or agreement.

*Id.* § 355.4-215(1).  A right to revoke the settlement is conferred by KRS § 355.4-301.  White and Summers clarify how these two UCC provisions work together:

> [I]f a bank receives a check on Wednesday morning and makes a provisional settlement for it (e.g., a credit to the presenter's account in the Federal Reserve), it would have until Thursday midnight to return that item or give notice.  If it fails to do so before Thursday midnight it will have made final payment under 4-215(a)(3) [(KRS § 355.4-215(1)(c))].

2 James J. White & Robert S. Summers, Uniform Commercial Code § 20-4 (4th ed. 1995).

Farmers and Bank One dispute whether Bank One made final payment on those three checks. Farmers contends that payment of the checks became final when Bank One posted the checks to Browning Pontiac's account. Bank One argues (1) that its actions in posting the checks to Browning Pontiac's account were not final payment of the checks and (2) that it returned the checks before its midnight deadline on June 16, 2003.

The Court agrees with Bank One on this issue. In the Official Comment to UCC § 4-215, the UCC drafters explain that the 1990 revisions to the UCC established that a payor bank's completion of its check posting process no longer represents final payment on a check. U.C.C. § 4-215 cmt. (1996). Kentucky courts may consult the Official Comments to the UCC in their "construction and application of KRS Chapter 355, but if the text and comment conflict, the text shall control." KRS § 355.1-110; *see e.g.*, *GMAC v. Lincoln Nat'l Bank*, 18 S.W.3d 337, 339-40 (Ky. 2000) (disagreeing with a lower court's interpretation of Official Comment 2(c) to UCC § 9-306 (KRS § 355.9-306)); *Stahl v. St. Elizabeth Med. Ctr.*, 948 S.W.2d 419, 423 (Ky. Ct. App. 1997) (referring to the Official Comment to UCC § 3-407 in its interpretation of KRS § 355.3-407).

Because Farmers presented the three checks to Bank One on

Friday, June 13, 2003, Bank One's midnight deadline fell on Monday, June 16, 2003. *See* KRS § 355.4-104(1)(j). Upon review of final payment as defined at KRS § 355.4-215, and with the Official Comment in mind, the Court finds that Bank One's actions on June 13, 2003 in posting the checks to Browning Pontiac's account did not represent final payment. The Court will now turn to whether Bank One satisfied the provisions of KRS § 355.4-301.

Bank One argues that it properly returned the three checks under KRS § 355.4-301 when it sent the checks to the Federal Reserve Bank on June 16, 2003. Bank One does not allege that the checks were unavailable for return, thus, Bank One was required to return the checks. *See id.* § 355.4-301(1)(a), (b). Neither party alleges that the checks were presented through a clearing house, so Bank One was required to return the checks pursuant to KRS § 355.4-301(4)(b). The Court finds that Bank One satisfied this subsection when it sent the checks to its transferor, the Federal Reserve Bank, on June 16, 2003. *Blake*, 555 S.W.2d at 596 ("Under UCC § 4-301(4)(b) an item is returned when it is 'sent' to the bank's transferor, in this case the Federal Reserve Bank.").

In addition to the foregoing argument, Farmers contends that it is entitled to summary judgment on check numbers 8577, 8582, and 8584 because Bank One's refusal to pay those three checks was a violation of the Expedited Funds Availability Act, 12 U.S.C. §§ 4001-10. A Farmers employee personally presented check numbers

8577, 8582, and 8584 to Bank One's Shelbyville, Kentucky branch on June 20, 2003. Farmers argues that despite the fact that Browning Pontiac had sufficient funds in its account to pay those checks on that date, Bank One refused to pay those checks in violation of § 4006(d).

Section 4006(d) provides:

Prohibition on freezing certain funds in an account. In any case in which a check is deposited in an account at a depository institution and the funds represented by such check are not yet available for withdrawal pursuant to this chapter, the depository institution may not freeze any other funds in such account (which are otherwise available for withdrawal pursuant to this chapter) solely because the funds so deposited are not yet available for withdrawal.

12 U.S.C. § 4006(d). Although few cases address subsection (d), the court in one unreported case discussed this subsection when faced with a situation similar to the one presented to this Court. In *Frost National Bank v. Parker*, No. 95-2150, 1999 WL 33438078, *13-14 (C.D. Ill. Feb. 26, 1999), *aff'd*, 241 F.3d 862 (7th Cir. 2001), Frost National Bank alleged that First of America Bank violated § 4006(d) by freezing its depositor's account after suspecting that he was engaged in a check-kiting scheme. The court concluded that First of America Bank was "entitled to summary judgment on this claim because no evidence demonstrates that [it] violated the [Expedited Funds Availability Act] when it froze the [depositor's] account." *Id.* at *14. The court found that First of America Bank's actions were proper under its deposit agreement.

12

Section 4006(d) prohibits banks from freezing funds that are already available for withdrawal simply because an additional deposit of checks is not yet available for withdrawal. Therefore, section 4006(d) does not prevent a bank from placing a hold on an account because it suspects that the account is being used in an check-kiting scheme. Bank One argues that it reviewed Browning Pontiac's account activity, observed a number of drafts and deposits between its Bank One and Farmers accounts, suspected a check-kiting scheme based on that review, and finally, froze Browning Pontiac's account. In this case, Farmers does not present any evidence to demonstrate that Bank One froze available funds in Browning Pontiac's account "solely because" Browning Pontiac had deposited checks into its account and the funds represented by those checks were not yet available for withdrawal. 12 U.S.C. § 4006(d). Farmers has failed to show that it is entitled to summary judgment on check numbers 8577, 8582, and 8584.

### C. Bank One's Motion for Summary Judgment on Check Numbers 8577, 8582, and 8584 and Check Numbers 8573, 8574, 8586, 8588, 8592, 8593, and 8594

Bank One argues that it is entitled to summary judgment on these ten checks because it has demonstrated that no genuine issue of material fact exists as to whether it met state and federal deadlines on these checks. Bank One argues that its dispatch of these checks to the Federal Reserve Bank satisfied KRS § 355.4-302(1)(a) and 12 C.F.R. § 229.30(a). Additionally, Bank One

13

contends that its dispatch of EARNS notices as to the checks satisfied 12 C.F.R. § 229.33(a).

As to check numbers 8573, 8574, and 8577, Bank One and Farmers disagree as to whether Bank One abided by state and federal deadlines. The parties agree that Farmers presented those three checks on June 10, 2003. Farmers alleges that Bank One did not return check numbers 8573 and 8574 until June 17, 2003, in violation of state and federal law. Bank One has submitted records which show that, in response to Farmers's June 10, 2003 presentation of check numbers 8573 and 8574, it sent those checks to the Federal Reserve Bank on June 11, 2003. Bank One contends that the June 17, 2003 return was in response to Farmers's June 16, 2003 re-presentment of check numbers 8573 and 8574, and thus, the checks were properly returned. As to check number 8577, the parties agree that the check was presented to Bank One on three occasions: the 10th, 13th, and 20th of June 2003. Bank One has presented records that it alleges demonstrate that check number 8577 was sent to the Federal Reserve Bank on June 11th and June 16th.[1] Farmers and Bank One agree that Farmers presented check numbers 8577, 8582, and 8584 to Bank One on June 13, 2003 and that Farmers presented check numbers 8586, 8588, 8592, 8593, and 8594 to

---

[1] The parties do not dispute that Bank One refused to pay check number 8577 when a Farmers employee personally presented it to one of Bank One's branches on June 20, 2003.

14

Bank One on June 16, 2003.[2]  Bank One contends that it sent check numbers 8577, 8582, and 8584 to the Federal Reserve Bank on June 16, 2003 and check numbers 8573, 8574, 8586, 8588, 8592, 8593, and 8594 to the Federal Reserve Bank on June 17, 2003.  Whether those returns satisfy KRS § 355.4-302(1)(a) will be discussed below.

Farmers contends that neither the law nor the facts support Bank One's arguments.  According to Farmers, under KRS § 355.4-301, Bank One was required to send a check to Farmers, not to the Federal Reserve Bank.  The Kentucky Court of Appeals in *Blake* explained that a bank could satisfy KRS § 355.4-302(1)(a) by returning a check by its midnight deadline pursuant to KRS § 355.4-301(4)(b):  "[A]n item is returned when it is 'sent' to the bank's transferor, in this case the Federal Reserve Bank."  *Blake*, 555 S.W.2d at 596.  Guided by the Kentucky Court of Appeals in *Blake*, the Court finds that Bank One satisfied KRS § 355.4-302(1)(a) by sending the checks to the bank's transferor, the Federal Reserve Bank.

Farmers argues that Bank One's documents do not support Bank One's argument.  Bank One has presented evidence that it sent these ten checks to the Federal Reserve Bank within their respective midnight deadlines.  Bank One has submitted the affidavit of Paul

---

[2] Pursuant to KRS § 355.4-104(j), Bank One's midnight deadline for check numbers 8577, 8582, and 8584 was midnight on June 16, 2003, and for check numbers 8586, 8588, 8592, 8593, and 8594, it was midnight on June 17, 2003.  KRS § 355.4-104(j).

Matheis, Vice President of Operations at Bank One's successor, JPMorgan Chase Bank, N.A., in which Mr. Matheis explains that the documents submitted by Bank One are cash letters and print screens from Bank One's internal software system that show that Bank One returned these checks to the Federal Reserve Bank before their midnight deadlines.  These cash letters and print screens, Mr. Matheis explains, show the date on which each check was returned to the Federal Reserve Bank.  Farmers, however, has failed to present any evidence that Bank One did not return the checks to the Federal Reserve Bank before the midnight deadlines.  In this case, Bank One's actions in returning the checks to the Federal Reserve Bank on June 11, 2003, June 16, 2003 and June 17, 2003 satisfied its obligation under KRS § 355.4-302(1)(a) to return the checks before the midnight deadlines.  Viewing the evidence in the light most favorable to Farmers, the Court finds that Farmers has failed to demonstrate that a genuine issue of material fact exists as to whether Bank One met its midnight deadlines as to these ten checks.

Farmers contends that Bank One failed to satisfy its obligations under 12 C.F.R. § 229.30(a).  To determine whether Bank One returned the checks in an "expeditious manner," the Court must determine whether sending the checks to the Federal Reserve Bank on June 11, 2003, June 16, 2003, and June 17, 2003 qualifies as "a manner such that the check[s] would normally be received by the depository bank not later than 4:00 p.m. . . . of the second

16

business day following the banking day on which the check[s were] presented to the paying bank." 12 C.F.R. § 229.30(a)(1)(i). The commentary in the appendices to this regulation explains that this test "does not necessarily require actual receipt of the check by the depositary bank within these times." *Id.* App. E, XVI(A). "Rather, the paying bank must send the check so that the check would normally be received by the depositary bank within the specified time." *Id.*

Bank One has presented evidence, in the form of cash letters and print screens from Bank One's internal software system, that it returned the checks in the following manner: (1) checks presented on June 10, 2003 (check numbers 8573, 8574, and 8577) were dispatched to the Federal Reserve Bank on June 11, 2003; (2) checks presented on June 13, 2003 (check numbers 8577, 8582, and 8584) were dispatched to the Federal Reserve Bank on June 16, 2003; and (3) checks presented on June 16, 2003 (check numbers 8573, 8574, 8586, 8588, 8592, 8593, 8594) were dispatched to the Federal Reserve Bank on June 17, 2003. With respect to each of these ten checks, Bank One followed the same process: It dispatched each check to the Federal Reserve Bank on the next business day following the business day that the check was presented to it. Farmers has not presented any evidence to demonstrate that this process did not result in returning the checks in an "expeditious manner," and thus, has failed to raise a genuine issue of material

17

fact as to whether Bank One satisfied the statute.

Farmers argues that Bank One violated 12 C.F.R. § 229.33(a) because Farmers did not receive timely notification of the returned checks. On June 17, 2003, Bank One sent EARNS Notices to Farmers notifying it of nonpayment and return of check numbers 8577, 8582, and 8584. Bank One also contends that it sent EARNS notices for check numbers 8573, 8574, 8586, 8588, 8592, 8593, and 8594 on June 18, 2003. Farmers argues that it never received notice of the return of these checks through EARNS. Instead, Farmers alleges that it received notice of the return of the checks when it received the checks on June 20, 2003.

The court in *Frost* explained the use of EARNS and dealt with the question of whether dispatching EARNS notices satisfies 12 C.F.R. § 229.33(a). *Frost*, 1999 WL 33438078, at *6. The *Frost* court held that "[b]y using EARNS, a financial institution satisfies the requirement set forth in Regulation CC that it provide notice of nonpayment of items over $2500." *Id.* (citing 12 C.F.R. § 229.33).

Bank One has submitted the affidavit of Daniel Pentel, president of Notification Systems, Inc., the company with which Farmers agreed to receive EARNS notices by fax. Mr. Pentel explains that Farmers received the notices for check numbers 8584, 8582, and 8577 via fax at 11:29 a.m. on June 17, 2003, and for check numbers 8573, 8574, 8586, 8588, 8592, 8593, and 8594 at 11:20

a.m. via fax on June 18, 2003.  Bank One submitted these records
with its reply in support of its motion for summary judgment.

Farmers contends that it never received notice of the return
of these checks through EARNS.  To support this argument, Farmers
offers the deposition testimony of its head bookkeeper, Teresa Jean
Waits.  Ms. Waits's testimony, however, does not provide support.
In response to the question of what happens to the information that
is received through EARNS, Ms. Waits answered: "I'm not sure what
they did at that time [June 2003].  Now we actually, you know,
store that and keep that information.  I don't know if they did at
that time, because my department was not doing that." (Waits Dep.
65:21-24, Mar. 24, 2005.)  Ms. Waits did not know how the notices
were received in June 2003, and only testified that she was told
that although Farmers had searched for those notices, Farmers did
not have them.  With only this deposition for support, Farmers has
not presented evidence to create a genuine issue of material fact
that it did not receive those EARNS notices.

**D.  Bank One's Motion for Summary Judgment on Check Number 4525**

Bank One argues that it is entitled to summary judgment on
check number 4525.  Bank One received the check from Farmers on
June 12, 2003 and sent it to the Federal Reserve Bank for
collection on Friday, June 13, 2003.  On the next business day,
Monday, June 16, 2003, Central Bank returned the check for
insufficient funds.

Under KRS § 355.4-202, Bank One, as a collecting bank, must exercise ordinary care in, among other things, "sending an item for presentment." KRS § 355.4-202(1)(a) (West 2005).  "A collecting bank exercises ordinary care under subsection (1) of this section by taking proper action before its midnight deadline following receipt of an item, notice, or settlement."  *Id.* § 355.4-202(2).

Bank One has submitted the affidavit of Randall Dougherty, Assistant Vice President at Bank One's successor, JPMorgan Chase Bank, N.A.  According to Mr. Dougherty, Bank One's records show that Bank One forwarded check number 4525 to the Federal Reserve Bank at 2:20 a.m. on Friday, June 13, 2003.  Bank One's midnight deadline under KRS § 355.4-104(j) was midnight on June 13, 2003.  Bank One also submitted a print screen from Bank One's internal software system that shows that Bank One forwarded this check to the Federal Reserve Bank for forward collection.  Farmers has not presented any evidence that Bank One failed to exercise ordinary care in its forwarding of check number 4525 to the Federal Reserve Bank.

### IV. CONCLUSION

With respect to the five checks that Bank One admits it returned after the expiration of state and federal deadlines, the Court finds that summary judgment shall be granted in favor of Plaintiff Farmers.  As to the remaining eleven checks at issue, Bank One has shown that there are no genuine issues of material

fact that preclude summary judgment in its favor.  Farmers has failed to present evidence that demonstrates that there is a genuine issue for trial regarding these eleven checks; therefore, summary judgment is proper.

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1) That Plaintiff's motion for partial summary judgment [Record No. 29] be, and the same hereby is, **GRANTED IN PART** and **DENIED IN PART**;

(a) Plaintiff's motion is granted with respect to check numbers 8587, 8590, 8591, 8595, and 8596;

(b) Plaintiff shall be awarded summary judgment in the amount of $120,503.00, the face amount of these five checks;

(c) Plaintiff's motion is denied with respect to check numbers 8577, 8582, and 8584;

(2) That Defendant's motion for partial summary judgment [Record No. 27] be, and the same hereby is, **GRANTED**; and

(3) That this action be, and the same hereby is, **DISMISSED WITH PREJUDICE**.

This the 16th day of December, 2005.



Signed By:

_Joseph M. Hood_

United States District Judge